THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| CHARLES MOMAH,<br><br>                Petitioner,<br><br>        v.<br><br>JEFFREY A. UTTECHT,<br><br>                Respondent. | CASE NO. C15-0536 JCC<br><br>ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS |

This matter comes before the Court on Charles Momah's petition for writ of habeas corpus, challenging his convictions for second degree rape, third degree rape and two counts of indecent liberties (Dkt. Nos. 1 and 26). The Honorable Brian Tsuchida, United States Magistrate Judge, issued a Report and Recommendation ("R&R") advising the Court to deny Momah's petition (Dkt. No. 36). Momah objects to the R&R (Dkt. No. 37).

After reviewing each of Momah's objections *de novo*, the parties' briefing, and the record, the Court agrees with the R&R's analysis in every respect but the closure claim, where it nonetheless agrees with the outcome. Therefore, the Court ADOPTS the Magistrate Judge's recommendation and DISMISSES the writ.

I.      BACKGROUND

In 2006, a King County Superior Court jury found Momah, a gynecologist, guilty of

Third Degree Rape, Second Degree Rape, and two counts of Indecent Liberties for sexually assaulting his patients. (Dkt. No. 17, Ex. 12 at 1.) He was sentenced to 245 months and is currently incarcerated at Coyote Ridge Correctional Facility in Connell, WA. (Dkt. No. 1 at 2.)

The Court will not recite the detailed state court procedural history already described in the R&R. (Dkt. No. 36 at 3). At issue now are Momah's objections to the R&R, which the Court understands as follows:

> **OBJECTION ONE:** That trial counsel's failure to call three particular witnesses to testify amounted to constitutionally ineffective assistance.
>
> **OBJECTION TWO:** That a juror's allegedly racist remarks during deliberations about Momah violated his Sixth Amendment right to an impartial jury and his right to due process.
>
> **OBJECTION THREE:** That the trial court's one-day courtroom closure during jury selection violated Momah's right to a public trial.

(Dkt. No. 37.) The Court will deal with each of these objections in turn.

## II.  DISCUSSION

### A.  Standard of Review

A district court reviews *de novo* the parts of a Magistrate Judge's R&R to which any party objects. 28 U.S.C. § 636(b)(1); *see also* Fed. R. Civ. P. 72(b)(3). Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a habeas petition can only be granted if a state court adjudication on the merits:

> (1)   resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)   resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). Under § 2254(d)(1), federal law is "clearly established" only if it is based on a United States Supreme Court holding that governed at the time of the relevant state court

decision. *Williams v. Taylor*, 529 U.S. 362, 412 (2000). To determine whether a particular decision is "contrary to then-established law, a federal court must consider whether the decision applies a rule that contradicts [such] law and how the decision confronts [the] set of facts that were before the state court." *Cullen v. Pinholster*, 563 U.S. 170, 182 (2011) (quoting *Williams v. Taylor*, 529 U.S. 362, 405, 406 (2000)) (internal quotation marks omitted). If the state court decision "identifies the correct governing legal principle" in existence at the time of its application, a federal court must assess whether the decision unreasonably applies that legal principle to the facts in the prisoner's case. *Id.* (quoting *Williams*, 529 U.S. at 413). It is not enough that a federal court be persuaded that the decision is erroneous. *Williams,* 529 U.S. at 411. Rather, the appropriate inquiry is whether the state court's application of federal law was objectively unreasonable. *Id.* at 409.

Under § 2254(d)(2), "[f]actual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary, and a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003) (internal citation omitted). AEDPA demands deference to state court findings of fact, subject to a federal court's "real, credible doubts about the veracity of essential evidence and the person who created it." *Hall v. Dir. of Corrections*, 343 F.3d 976, 984 n.8 (9th Cir. 2003).

The Court is mindful of its limited role in adjudicating this petition. A federal court in habeas corpus proceedings may not "take the extraordinarily intrusive action of setting aside a state criminal conviction in the guise of due process review, simply because [it] disagree[s] with the state court's interpretation of state law." *United States ex rel. Burnett v. Illinois,* 619 F.2d

668, 671 (7th Cir. 1980), *cert. denied,* 449 U.S. 880 (1980). "Federal habeas review should consider only violations of the Constitution, laws or treaties of the United States." *Shillcutt v. Gagnon*, 827 F.2d 1155, 1158 (7th Cir. 1987).

### B.  Evidentiary Hearing

Momah does not object to the Magistrate Judge's recommendation denying his request for an evidentiary hearing. (Dkt. No. 37.) An evidentiary hearing is appropriate if a habeas petitioner meets two conditions: "He must (1) allege facts which, if proven, would entitle him to relief, and (2) show that he did not receive a full and fair hearing in a state court, either at the time of the trial or in a collateral proceeding." *Gonzalez v. Pliler*, 341 F.3d 897, 903 (9th Cir. 2003) (quoting *Belmontes v. Woodford*, 335 F.3d 1024, 1053-54 (9th Cir. 2003). Because Momah's objections raise only questions of law, he does not meet these conditions and no evidentiary hearing is required.

The R&R is therefore ADOPTED in this respect.

### C.  Analysis

#### 1.  Objection One: Ineffective Assistance of Counsel

Momah argues that his trial counsel was ineffective because he did not call Lynn Butler, Cinnamon Krall, and/or Jennifer Sloan to testify. "Counsel is unconstitutionally ineffective if his performance is both deficient, meaning his errors are 'so serious' that he no longer functions as 'counsel,' and prejudicial, meaning his errors deprive the defendant of a fair trial." *Maryland v. Kulbicki*, 136 S. Ct. 2, 3 (2015) (quoting *Strickland v. Washington*, 466 U.S. 668, 687 (1984)).

Regarding the deficiency prong, "[c]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable judgment." *Strickland*, 466 U.S. at 690. "[T]he relevant inquiry under *Strickland* is not what defense counsel

should have pursued, but rather whether the choices made by defense counsel were reasonable." *Siripongs v. Calderon*, 133 F.3d 732, 736 (9th Cir. 1998). Under the prejudicial prong, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 695. "That requires a substantial, not just conceivable, likelihood of a different result." *Cullen*, 563 U.S. at 189 (internal quotation marks omitted).

The Washington State Court of Appeals found that Momah failed to satisfy either prong of the *Strickland* standard. (*See* Dkt. No. 17, Ex. 22 at 3–5) ("[R]easonable counsel could have legitimately chosen to focus on the motives, biases, and lack of credibility of the State's witnesses rather than present general testimony and evidence regarding Momah's office policies or usual behavior.").

### a. Testimony of Lynn Butler

Momah contends his trial counsel should have called Lynn Butler to contradict testimony that he administered Fentanyl, a powerful anesthetic, to victim Rena Burns. (Dkt. No. 37 at 2.) Momah argues that Lynn Butler would have testified that Momah had no access to Fentanyl on his own, and that she would have known if someone managed to break into her locked supply. (Dkt. No. 37 at 2.) However, the state court reasonably concluded that trial counsel's performance was competent. There is a strong likelihood that Butler would have been advised not to testify because she was under investigation by state and federal authorities due to her alleged mishandling of controlled substances. (*See* Dkt. No. 17, Ex. 18 at Ex. 2 & 3 to Appendix C of personal restraint petition.)

Even if she had testified, her proposed testimony was of limited value because the prosecution could have impeached her about her improper practices in ordering and handling

drugs. *See id.* Furthermore, Butler was not even present during Burns's examination, so she could not have conclusively testified that Momah did not administer Fentanyl to Burns. (Dkt. No. 17, Ex. 22 at 4-5.)

Therefore, Momah has failed to rebut the presumption that trial counsel reasonably determined that Butler's testimony would have damaged Momah's case and was therefore competent in deciding not to call her. Nor can Momah prove prejudice, because Butler's testimony was of limited value and would not have altered the jury's verdict. *See Strickland*, 466 U.S. at 693 ("It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding.").

### b. Testimony of other witnesses

Momah also argues that counsel was ineffective for failing to present testimony from two other witnesses. First, Momah argues that Cinnamon Krall, one of his former employees, would have testified that Momah did not have anesthetic drugs such as Fentanyl at the Burien office where Burns had her examination. (Dkt. No. 37 at 4.) Second, Momah argues that Jennifer Sloan, a friend of Burns who went with her to the examination, would have testified that Burns did not appear sedated and did not mention a sexual assault after her appointment. *Id.* Again, Momah does not overcome the presumption that the decision not to call these witnesses was competent representation.

Neither witness was present during any of the incidents that gave rise to the charges. (Dkt. No. 17, Ex. 22 at 4.) And Momah's counsel risked damaging his client if Krall testified because her testimony could open the door to evidence Momah had successfully excluded. (Dkt. No. 17, Ex. 34 at 90.)

Sloan's testimony would also have had limited value. Momah does not present any

ORDER DENYING PETITION FOR WRIT OF
HABEAS CORPUS
PAGE - 6

declaration from Sloan suggesting she would have testified favorably for him. (Dkt. No. 38 at 6–7.) And it appears that much of her testimony would have been excludable hearsay. (Dkt. No. 26 at 28-29.)

Momah argues that Sloan could have provided non-hearsay testimony regarding (1) her observations of whether Burns was sedated, and (2) her recollection that Burns did not mention a sexual assault. (Dkt. No. 37 at 4.) But the Court agrees with Respondent that such testimony would have had limited impeachment value. There is no indication that Sloan was qualified to give an opinion about whether Burns was under the influence of a drug. *See* Fed. R. Evid. 701(c) (non-expert witnesses may not give opinion testimony that is "based on scientific, technical, or other specialized knowledge"). And there are many reasons why Burns may not have mentioned the sexual assault, such as being in a state of shock. (Dkt. No. 38 at 7.)

Momah has therefore failed to demonstrate that counsel's decision not to call Krall and Sloan to testify was unconstitutionally deficient. *Siripongs*, 133 F.3d at 736.  Moreover, because Krall and Sloan's testimony would have been of limited value, Momah has also failed to demonstrate that counsel's decision not to call them was prejudicial. *Strickland*, 466 U.S. at 693.

Thus, the R&R is ADOPTED with regard to Momah's first objection.

### 1. Objection Two: Juror's Racist Remarks

On appeal, Momah presented a declaration from a juror to support his claim that this particular juror was racially biased.[1] The Washington Court of Appeals held that Momah was not

---

[1] The juror wrote in her declaration, "I also mentioned during deliberations that Dr. Momah was intimidating because he was big and black. I felt that helped to explain why patients would not question him when he behaved improperly during examinations." (Dkt. No. 26 at 35.) Another juror offered a declaration about deliberations but was unable to remember the race-related

entitled to relief under his impartial jury claim and the Magistrate Judge agreed. (Dkt. No. 36 at 17.) Momah objects to this conclusion, arguing that "the bias or prejudice of a single juror violates the Sixth Amendment requirement of an impartial jury." (Dkt. No. 37 at 5.) Momah also argues that a biased fact finder violates a defendant's right to due process.

The Court agrees with Momah that under Ninth Circuit precedent, "[t]he bias or prejudice of even a single juror *would* violate [a defendant's] right to a fair trial." *Dyer v. Calderon*, 151 F.3d 970, 973 (9th Cir. 1998) (emphasis added). But Momah does not cite authority suggesting this rule is well established in Supreme Court jurisprudence. (Dkt. No. 37 at 5.) Momah does cite a Supreme Court case—*In re Murchison*, 349 U.S. 133, 136 (1955)—for his argument that a biased fact finder violates the defendant's right to due process; however, this case is inapposite.

In *Murchison*, the same judge sat as a "one-man judge-grand jury" before which witnesses testified, and then also presided at a contempt hearing where those same witnesses were charged with contempt. 349 U.S. at 135-36. The Supreme Court held that this constituted a violation of due process. *See id.* at 139 ("We hold that it was a violation of due process for the 'judge-grand jury' to try these petitioners, and it was therefore error for the Supreme Court of Michigan to uphold the convictions."). Such a circumstance is a far cry from what happened in Momah's case.

Furthermore, Federal Rule of Evidence 606(b) plainly restricts a court's ability to pry into jury deliberations except for very narrow exceptions. It reads as follows:

> (1) **Prohibited Testimony or Other Evidence.** During an inquiry into the validity of a verdict or indictment, a juror may not testify about any statement made or incident that occurred during the jury's deliberations; the effect of

---

comments; however, this juror had previously recounted them in an interview conducted when her memory was fresh. *Id.*

> anything on that juror's or another juror's vote; or any juror's mental processes concerning the verdict or indictment. The court may not receive a juror's affidavit or evidence of a juror's statement on these matters.
>
> (2) **Exceptions.** A juror may testify about whether:
>
> > (A) extraneous prejudicial information was improperly brought to the jury's attention;
> >
> > (B) an outside influence was improperly brought to bear on any juror; or
> >
> > (C) a mistake was made in entering the verdict on the verdict form.

Fed. R. Evid. 606(b). Momah argues that the Ninth Circuit held in *United States v. Henley* that preventing racial bias during jury deliberation is an exception to Rule 606(b). 238 F.3d 1111, 1120 (9th Cir. 2001). But this characterization of *Henley* is irrelevant, because Momah's interpretation of Rule 606(b) has not been adopted by the Supreme Court and is unsupported by the Supreme Court opinions cited in his brief. Instead, the Supreme Court has held that "information is deemed 'extraneous' if it derives from a source 'external' to the jury." *Warger v. Shauers*, 135 S. Ct. 521, 529 (2014). "'External' matters include publicity and information related specifically to the case the jurors are meant to decide, while 'internal' matters include the general body of experiences that jurors are understood to bring with them to the jury room." *Id.* Momah has therefore failed to prove that the state court's determination that the juror's statements were "internal" and therefore inadmissible was an unreasonable application of clearly established federal law.[2]

Thus, the R&R is ADOPTED with regard to Momah's second objection.

//

---

[2] Although the Court finds the juror's comments concerning, "Rule 606(b) reflects a deliberate choice to exclude post-verdict juror testimony, with only few exceptions." *Shillcutt v. Gagnon*, 827 F.2d 1155, 1158 (7th Cir. 1987). None of those exceptions are present here.

ORDER DENYING PETITION FOR WRIT OF
HABEAS CORPUS
PAGE - 9

### 1. Objection Three: Closing the Courtroom for a day

Momah contends that his right to a public trial was violated when nearly an entire day of jury selection took place in private chambers. (Dkt. No. 37 at 6.)

Momah's case was highly publicized at the time of trial. (Dkt. 17, Ex. 12 at 1.) For this reason, over 100 prospective jurors were summoned. *Id.* Based on the jurors' responses to portions of the juror questionnaire, the judge, prosecutor, and defense counsel discussed a list of jurors to be individually questioned. *Id.*

The individual questioning occurred in the judge's chambers and the jury room with a court reporter present and the door closed. (Dkt No. 17, Ex. 38, at 19–20, 106.) Throughout the jury selection process, Momah did not object to the individual questioning in chambers or in the jury room. Momah's counsel actively participated in individual juror questioning, and as a result of the in-chambers *voir dire*, defense counsel exercised numerous challenges for cause. (Dkt. No. 17, Ex. 12, at 2.) Momah objected for the first time on appeal, which is permitted under well-settled Washington State law. (Dkt. 17, Ex. 12, at ¶ 28); *see also State v. Bone-Club*, 128 Wash. 2d 254, 257 (1995) (holding that "Defendant's failure to object contemporaneously did not effect a waiver" of his public trial right).

Momah presents a compelling argument that federal law was unreasonably applied in the state trial court's decision to close the courtroom, and in the state supreme court's analysis of that closure. Nonetheless, his claim is not entitled to habeas relief because Momah waived his public trial right under federal law when he failed to object to the closure.

The Sixth Amendment guarantees a criminal defendant's right to a public trial. U.S. Const. amend VI. In *Waller v. Georgia*, the Supreme Court adopted a balancing test to determine when the presumption of openness in a public trial may give way to protect a defendant's other

rights. "[T]he party seeking to close the hearing must advance an overriding interest that is likely to be prejudiced, the closure must be no broader than necessary to protect that interest, the trial court must consider reasonable alternatives to closing the proceeding, and it must make findings adequate to support the closure." *Waller v. Georgia*, 467 U.S. 39, 48 (1984).

In reviewing Momah's closure claim, the Washington State Supreme Court applied *State v. Bone–Club*, which created a closure standard mirroring that of *Waller*. 128 Wash. 2d at 258-60; (Dkt. No. 17, Ex. 12 at 3.) The Washington Supreme Court found that the closure occurred to protect Momah's right to a fair trial and that Momah was not entitled to relief. (Dkt. 17, Ex. 12); *see also State v. Momah*, 167 Wash.2d 140 (2009). The Court disagrees with the Washington Supreme Court's analysis to the extent it relies on federal law. Nonetheless, the Court concurs with its decision on other grounds.

The Washington Supreme Court's analysis of the trial court's closure decision overlooked three ways in which the trial court seemingly failed the *Waller* test. First, the trial court failed to consider reasonable alternatives to closing the proceeding, because the individual questioning could have been conducted in open court with groups of jurors waiting in the jury room.[3] Second, the closure was seemingly broader than necessary, because the record indicates that some jurors who were questioned privately did not require private questioning. (Dkt. No. 17, Ex. 38, at 19.) Third, and most glaringly, the closure did not occur to "advance an overriding interest that is likely to be prejudiced"; rather, it was simply more convenient for the trial court to conduct *voir dire* in chambers. (Dkt. No. 17, Ex. 38 at 2.) At the time of *voir dire*, the trial court

---

[3] In Momah's Washington Supreme Court adjudication, the dissent pointed out that the trial court used this method of individual questioning on the third day of jury selection. (Dkt. 17, Ex. 12 at 8.) Had the trial court conducted a proper closure analysis at the outset of jury selection, it might have discovered this alternative sooner.

ORDER DENYING PETITION FOR WRIT OF
HABEAS CORPUS
PAGE - 11

apparently did not have a big enough room to seat all of the jurors while the individual questioning took place, because the large courtroom on the ninth floor had a domestic violence calendar taking place in the afternoon. (*Id.*) Although this situation surely presented some difficulties, it is an insufficient basis for closure.[4]

However, despite these apparent problems with the state court adjudication, Momah cannot succeed on this claim. Because he failed to object to the closure, he has forfeited his public trial right under federal law. *See Levine v. United States*, 362 U.S. 610, 618-19 (1960) (holding that a failure to object to closure waives the right to a public trial). "Although the right to a public trial provides benefits to society as a whole, a defendant may nevertheless forfeit the right, either by affirmatively waiving it or by failing to assert it in a timely fashion." *United States v. Rivera*, 682 F.3d 1223, 1232 (9th Cir. 2012) (internal citation omitted). Momah had adequate opportunity to object but did not; rather, he affirmatively participated in the private *voir dire*. (Dkt. No. 17, Ex. 12 at 4.) Momah does not dispute that trial counsel failed to object to the closure. (*See* Dkt. No. 7 at 48) ("There can be no doubt that defense counsel did no more than fail to object to the trial court's closure of voir dire.").

Thus, the R&R is ADOPTED with regard to Momah's third objection.

### 4. Certificate of Appealability

The Court may issue a certificate of appealability only when a petitioner has made "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(3). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district

---

[4] Similarly, the Washington Supreme Court's determination that Momah benefited from the closure was also unreasonable. Momah did not benefit from the closure; he benefitted from the individual questioning.

court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El*, 537 U.S. at 327. Because Momah has not made such a demonstration, he has failed to satisfy the § 2253(c)(3) standard. The Court therefore declines to issue a certificate of appealability.

**III.   CONCLUSION**

After reviewing each of Momah's objections *de novo*, the Court departs from the R&R's analysis only with regard to the closure claim, where it nonetheless agrees with the outcome. The Court therefore ADOPTS the Magistrate Judge's recommendation and DISMISSES the writ.

DATED this 17th day of March 2016.

John C. Coughenour
UNITED STATES DISTRICT JUDGE